# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SIA SEECHAN, | ) | 1:09-cv-00610 GSA |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## **BACKGROUND**

Plaintiff Sia Seechan ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 9 & 10.

1

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff protectively filed her application on or about May 5, 2006, alleging disability beginning January 15, 2006, due to mental illness. AR 71-83. Her application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 56-67. ALJ Christopher Larsen held a hearing on February 28, 2008, and issued an order denying benefits on May 19, 2008. AR 14-20, 330-347. On January 30, 2009, the Appeals Council denied review. AR 3-5.

**Hearing Testimony**

ALJ Larsen held a hearing on February 28, 2008, in Fresno, California. Plaintiff appeared and testified with the assistance of an interpreter. Plaintiff was represented by attorney Sengthiene Bosavanh. Vocational Expert ("VE") Thomas Dachelet also testified. AR 330-347.

Plaintiff was born August 6, 1970. She lives with her husband and children, although she could not say how many children live in the home. AR 336.

Plaintiff does not drive and has never driven. She gets a "ride with the children." AR 336. She attended school in Thailand, but did not know the length of that education. She cannot speak or understand English, nor can she read or write English. AR 336-337. She has not had any educational or vocational training in the United States. AR 337.

Plaintiff's last position was as a cleaner with Vapor Technologies. She stopped working because the company closed down. AR 337. She has not tried looking for other work because she does not speak English. Asked how she got the position with Vapor Technologies, she explained that a friend employed by Vapor took her to work there. AR 338.

When asked whether she would be able to perform any of her past jobs, Plaintiff explained she was not longer able to do so because she has trouble sleeping, is depressed, has no energy and hears voices. AR 338. She experiences pains in her stomach as well, but it comes and goes. AR 338. She no longer has headaches. AR 339.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1   The medications prescribed to treat her conditions help, however, they do not relieve all
2   the symptoms. AR 339.  Plaintiff indicated she has trouble concentrating "a little bit."  She can
3   focus on one activity for about five minutes before losing her focus.  AR 339.

4   When she goes to sleep and closes her eyes, she sees and hears "things" that keep her
5   awake.  AR 339-340.  When she dreams, she sees her father and her husband's first wife, both of
6   whom are dead.  She hears their voices "all the time."  AR 340.  She gets a couple hours of sleep
7   at night; once she awakes she cannot go back to sleep.  Occasionally she sleeps "a little bit"
8   during the day.  AR 340.  About once a week she suffers from having no energy.  Because she
9   sleeps so little, she is often tired.  AR 340.

10  When asked what depression meant to her, Plaintiff indicated that because she had no
11  family or parents here in the United States, she is alone and that causes her to be depressed.  AR
12  340-341.  She does not have suicidal thoughts.  AR 341.  She eats very little and feels stressed.
13  The nightmares sometimes occur two to three times a night, or can occur two or three times per
14  week.  AR 341.

15  Plaintiff does not suffer from dizziness any longer, and she could not recall the last time
16  she suffered from dizziness.  AR 341.  She has trouble remembering things.  AR 341.  Plaintiff
17  indicated she does not remember meeting with her attorney two weeks prior to the hearing, nor
18  does she recall delivering documents to her attorney.  AR 341-342.  She often forgets the people
19  she meets or the activities she has done.  AR 342.  Dealing with others does not cause her any
20  problems.  She regularly socializes with two friends.  AR 342.

21  A typical day for Plaintiff is staying home and doing nothing.  Her children do the
22  cooking and cleaning.  Her three children are about sixteen, seventeen and eighteen years of age,
23  but she does not know their exact ages.  AR 342-343.  Although she used to do the cooking and
24  cleaning, she no longer does so because she does not "feel good to do that anymore."  AR 343.
25  She feels "stressed, depressed and not interested at all."  AR 343.

26  Plaintiff does not remember working for Cargill Meat Solution Corporation, SOS
27  Staffing Services or Broomfield Skilled Nursing.  AR 344.

28

VE Dachelet indicated that Plaintiff's previous work with Vapor Technologies was considered a medium physical demand, unskilled. The skills are not transferable. AR 345. When asked to consider a hypothetical worker of Plaintiff's age, education and work experience, who can understand, remember and carry out simple one or two-step job instructions, VE Dachelet indicated that the hypothetical worker could perform Plaintiff's past relevant work. AR 345.

In a second hypothetical, involving a hypothetical worker of Plaintiff's age, education and work experience, who cannot maintain attention and concentration reliably throughout an eight-hour work day or a forty-hour work week, VE Dachelet indicated that such a worker could not perform Plaintiff's past relevant work nor any other work found in the national economy. AR 345-346.

Plaintiff's counsel asked the VE whether forgetfulness in included in simple repetitive tasks; the VE clarified that forgetfulness involves reduction to the simple world of work. AR 346.

**Medical Record**

The entire medical record was reviewed by the Court. A summary of the reports and treatment notes is provided below.

***Ina Shalts, M.D.***

Plaintiff was treated by Dr. Shalts from August 28, 2006, through January 28, 2008, for depression.

On August 28, 2006, Plaintiff was seen at the Tulare Adult Clinic for a psychiatric evaluation. Plaintiff reported sleep disturbances and "hearing voices." Through an interpreter, Plaintiff indicated she has been depressed for six months. She has crying spells, and low energy. Her appetite is affected and she is always tired. She indicated she heard voices call her name when she was alone, but she could not describe the voices. She often replied that she did not remember things in response to a question. The doctor noted Plaintiff was asked how old she was and she said she did not know, but apparently was able to tell a case manager her age during an earlier interview. Plaintiff indicated she would fall asleep and then wake up, and these

symptoms started when she found out her husband had a previous wife, who is now deceased. She also believes she hears her father calling her name. Plaintiff denied any suicidal or homicidal ideation. She reported she feels hopeless, and that she suffers from a lot of headaches, dizziness and unsteadiness. It was noted that Plaintiff's primary care physician prescribed Seroquel 200 mg two times a day, Geodon 20 mg two times a day, and Aprazolam 0.5 mg two times a day. Plaintiff reported feeling better, without side effects, but she remains depressed. It was also noted that Plaintiff may be noncompliant with her medication because the bottle of Seroquel was nearly full, and when asked Plaintiff indicated she did not know how to take the medication. Plaintiff indicated a history of back pain, dizziness and headaches. AR 302.

Dr. Shalts' mental status exam results of August 28, 2006, indicate Plaintiff was of an average build, with good hygiene and clean clothing. Plaintiff became more talkative throughout the interview, and the doctor noted that a lack of eye contact could be cultural. Plaintiff's speech was goal directed, she denied any suicidal or homicidal ideation. The doctor noted Plaintiff's memory was intact and her insight and judgment were limited. AR 303. Dr. Shalts diagnosed major depressive disorder, recurrent, moderate, rule out psychotic disorder. A GAF[3] score of 50 to 55 was noted. Dr. Schalts' plan included discontinuing the use of Geodon, adding Seroquel at 400 mg and 15 mg of Remeron. Plaintiff was to continue using Aprazolam 0.5 mg for anxiety. AR 304.

A treatment note dated November 2, 2006, indicates Plaintiff reported "doing much better on medications," the depression had decreased and that she was no longer hearing the voices. The medications were not causing any side effects. Plaintiff was guarded and her affect was flat. She was to continue medications and follow up treatment. AR 291.

On December 28, 2006, Plaintiff reported the medication was helping, but that a few weeks ago she began to experience more anxiety and depression. She was not sleeping well after running out of Seroquel and was hearing voices again. Plaintiff was alert and oriented, her

---

[3]The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM IV").

1  memory was intact.  The treatment plan was to continue use of Seroquel, Remeron, and
2  Aprazolam.  Xanax was added.  AR 284.
3        On March 8, 2007, Plaintiff reported that she continued to hear voices of people speaking
4  to her, "sometimes in the morning and sometimes at night."  She awakens a few times during the
5  night and when she takes the Seroquel it makes her drowsy.  She indicated her children did the
6  chores at home and she spends a lot of time in her room.  AR 197.  Dr. Shalts noted Plaintiff was
7  alert and oriented, answered questions through the interpreter, and appeared depressed.  Plaintiff
8  denied suicidal or homicidal ideation, her affect was flat and her insight and judgment were
9  limited.  She was to continue taking medications prescribed, and Abilify was additionally
10 prescribed.  AR 197.
11       On March 22, 2007, Plaintiff said the voices had decreased but that she still heard them
12 sometimes "mumbling and rambling" and that it continued to scare her.  However, she said her
13 depression was decreased.  Dr. Shalts noted Plaintiff had good eye contact and answered
14 questions through the interpreter.  Plaintiff denied suicidal ideation and her affect was flat.  Dr.
15 Shalts opined Plaintiff's insight and judgment were limited.  She was to continue taking the
16 medications prescribed.  AR 195.
17       The following month, Plaintiff reported that she continued to hear voices and was
18 paranoid.  She denied suicidal or homicidal ideation and noted her depression was decreased.
19 Dr. Shalts increased the dosage of Abilify and discussed a treatment plan with Plaintiff.  AR 186.
20       On August 7, 2007, Plaintiff advised Dr. Shalts that she felt good on her medication, she
21 did not hear voices anymore, did not feel depressed and was sleeping well.  She indicated she had
22 recently suffered from stomach upset, nausea and dizziness.  AR 140.  Plaintiff was cooperative,
23 denied suicidal ideation, and denied auditory and visual hallucinations.  Plaintiff was stable on
24 her regular medications, and had not reported any side effects from those medications.  AR 140.
25 Dr. Shalts did refer Plaintiff to the emergency room with regard to her vomiting and nausea.  AR
26 140-141.
27       On September 13, 2007, Plaintiff denied hearing voices on that date, but indicated she
28 "hears voices off and on."  She was alert and oriented, and mildly depressed.  She denied suicidal

or homicidal ideation.  Insight and judgment were fair.  She was to continue taking prescribed medications.  AR 132.

On January 28, 2008, Plaintiff was "stable on medication" and she was to continue taking Abilify, Seroquel, Aprazolam and Remeron.  She denied hearing voices and indicated she was "sleeping and eating well."  AR 127.

### Ravi I. Kumar, M.D.

On May 3, 2006, Plaintiff saw Ravi I. Kumar at the Tulare Community Health Clinic. She reported dizziness and an inability to sleep at night.  Plaintiff's interpreter indicated she would not sleep at night due to nightmares that her husband's first wife is trying to kill her.  The nightmares have been a problem for two to three months and she is depressed.  Dr. Kumar's examination noted Plaintiff was somewhat pale and did not make eye contact.  Plaintiff did not have suicidal ideation or plans.  Dr. Kumar assessed dizziness, nightmares, insomnia and possible anemia.  The doctor prescribed Lorazepam and ordered a chest x-ray and labs.  The doctor also referred Plaintiff to mental health.  AR 267-268.

On May 5, 2006, Plaintiff complained of being unable to eat and sleep, and of nightmares.  She reported the prescription for Lorazepam had not helped.  She was alert and oriented and in no acute distress.  Dr. Kumar asked Plaintiff's niece to take her to the mental health clinic for registration and further care.  AR 265.

On May 25, 2006, Plaintiff complained of low back pain, insomnia, depression and anxiety.  AR 261.  She indicated the Seroquel was not helping and she wanted a refill of Lorazepam.  Plaintiff was alert and oriented, and in no acute distress.  The doctor noted a "very rigid affect, not much interaction."  Medication changes were made and an x-ray of the spine and back were ordered.  AR 261.  A May 26, 2006, MRI report indicates minor lumbar scoliosis, minor degenerative changes at L4 and minor anterior wedging at L1 "probably long-standing."  AR 254.

A June 8, 2006, treatment note indicates Plaintiff reported feeling less anxiety and depression, and better sleep.  Plaintiff indicated she wished to continue taking the medications

prescribed. Dr. Kumar noted Plaintiff was alert and oriented. She was "much more interactive" and her affect was stable and normal. AR 258.

In a treatment note dated July 27, 2006, Plaintiff was "doing extremely well" on the prescribed medications. Objective signs were all normal. Plaintiff was prescribed a medication for her decreased appetite and was to continue with previously prescribed medications. AR 248.

On September 6, 2006, Dr. Kumar noted Plaintiff was "more vocal and has more eye to eye contact." It was noted Plaintiff felt "happy." AR 240.

On December 21, 2006, Plaintiff reported she was not doing well because she was having nightmares wherein someone with a knife was trying to kill her. Dr. Kumar noted Plaintiff was not in any apparent distress. He increased the dosage of Aprazolam. AR 228.

Treatment notes dated August 15, 2007, indicate Plaintiff continued to complain of abdominal pain, yet a CAT scan of the abdomen and pelvis were negative. Dr. Kumar referred Plaintiff to a GI specialist for work up and possible colonoscopy and signoidoscopy. AR 159-162.

On September 13, 2007, Plaintiff was waiting for an appointment to be scheduled with a GI specialist following complaints of abdominal pain. Dr. Kumar assessed gastroesophageal reflux disease, dizziness and major depression. He refilled a prescription for Meclizine to treat dizziness. AR 157.

On November 26, 2007, Plaintiff complained of nightmares, insomnia, anxiety and depression. Dr. Kumar noted that Plaintiff receives her psychiatric medications through her psychiatrist, and indicated Plaintiff was just "touching base with her primary care physician off and on." AR 152.

Plaintiff was treated on January 12, 2008, for complaints of cough, body aches, headaches and sore throat. AR 150. Dr. Kumar assessed bronchitis, and noted histories regarding headache, fever, sore throat and depression. He ordered lab work, an x-ray and prescribed medications. AR 150-151.

Plaintiff was seen on January 18, 2008, following lab work. The lab results indicated a positive result for E coli infection in her urine. Dr. Kumar diagnosed a urinary tract infection and prescribed Cipoflaxacin. AR 146-149.

### *Comprehensive Psychiatric Evaluation*

Psychiatrist Greg Hirokawa performed a comprehensive psychiatric review of Plaintiff on September 1, 2006.

Dr. Hirokawa noted that Plaintiff's "participation level was questionable" as she was not able to provide reliable information and "appeared to be a poor historian." She did not know when she arrived in the United States. She was not able to complete a brief psychosocial history questionnaire.

Plaintiff reported feeling depressed, hearing voices, suffering from memory problems, and having nightmares. She reported that she was "seeing ghosts and dead people." She suffered mood swings, was withdrawn, had poor concentration and worried a lot. AR 322. Plaintiff said she was alone in the United States and missed her parents, but did not know where her parents were. She claimed not to remember anything. Plaintiff's friend, acting as interpreter, indicated that Plaintiff mainly stays at home and does not like to be around others. AR 322-323.

Plaintiff indicated she had been married for thirteen years and has two boys and one girl. The family's source of income is welfare and they live in an apartment. She reported past work experience, but did not remember details, and had no plans to work in the future. She has never been arrested. AR 323.

Dr. Hirokawa's mental status examination revealed Plaintiff's posture and hygiene were fair, and she was of a thin build. Eye contact was poor. Plaintiff's inability to provide details or reliable information did not appear to be the result of a memory problem, but rather a "desire to present herself as someone who has a poor memory." Psychomotor function was normal. The stream of mental activity, speech and content of thought were normal. Plaintiff's mood was depressed and her affect was restricted. Plaintiff was oriented times one; she did not know the place or time. Her intellectual functioning appeared to be within the average range. Recent memory was noted to be "selectively impaired due to her inability to remember what she had for

breakfast." The same was said of remote memory. Plaintiff was unable to name three Presidents of the United States and could not identify the capitol or governor of the State of California. She did not know why the moon appears larger than the stars, or why food is refrigerated. AR 324. Plaintiff indicated there were eight months to a year and two days to a week. AR 324-325. She could not perform a simple math calculation and was unable to perform a simple three-step command. Concentration for conversation was adequate. She could not answer inquiries regarding abstract thinking nor could she respond to questions concerning similarities and differences. AR 325. Plaintiff reported she does not do any chores around the house. She just stays at home. She reported having no friends. AR 325.

Dr. Hirokawa diagnosed depressive disorder, not otherwise specified. He noted a current GAF score of 62,[4] and assessed the same score for the previous year. AR 325. With regard to Plaintiff's prognosis, the doctor indicated that her "reported symptoms appear questionable in light of her attempt to feign memory problems," and the depression is mild. The doctor believed the likelihood that Plaintiff's condition would improve within the next twelve months was fair. AR 326.

With regard to functional assessment, Dr. Hirokawa indicated Plaintiff was not capable of managing funds, but could understand and remember very short and simple instructions. He also found she could understand and remember detailed instructions. She could maintain attention and concentration for an extended period and could accept instructions from supervisors and respond appropriately to criticism. The doctor found Plaintiff able to complete a normal workday and work week without interruption from psychologically based symptoms. He believed her ability to interact with coworkers was fair, and that she could withstand the stress of a routine day and various changes in the work setting. AR 326.

---

[4]The DSM-IV-TR states a GAF score from 61-70 indicates: "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

*Psychiatric Review Technique*

Craig A. Smith, M.D., performed a psychiatric review on December 4, 2006. Dr. Smith noted that Plaintiff suffered from depressive disorder not otherwise specified. AR 201. Plaintiff was mildly limited in the restriction of activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace. AR 208. There was insufficient evidence of any episode of decompensation. Dr. Smith noted that Plaintiff was not significantly limited in the ability to remember locations and carry out work procedures, or in the ability to understand and remember very short and simple instructions. AR 212. Plaintiff was moderately limited in the ability to understand and remember, and carry out, detailed instructions. AR 212. All other limitations regarding sustained concentration and persistence were not significantly limited. AR 212-213. No limitations regarding social interaction or adaptation were identified. AR 213. The doctor specifically noted Plaintiff was capable of understanding, remembering and carrying out one and two step simple commands on an extended basis, and could relate to peers in a work setting. AR 214.

On April 26, 2007, Psychiatrist Archimedes Garcia reviewed and affirmed Dr. Smith's findings. AR 214.

**ALJ's Findings**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 5, 2006, and had the severe impairment of a major depressive disorder. AR 16. Nonetheless, the ALJ determined that the severe impairment did not meet or exceed one of the listing impairments. AR 17.

Based on his review of the medical evidence, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, limited to the ability to understand, remember and carry out only simple one or two-step job instructions. AR 18. The ALJ determined that Plaintiff was capable of performing her past relevant work as a cleaner. AR 19-20.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

### REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) could perform her past relevant work. AR 14-20.

Here, Plaintiff argues that the ALJ's determination that she could perform her past relevant work is not supported by substantial evidence.

## DISCUSSION

### A.     *Plaintiff's Past Relevant Work*

Plaintiff contends that the ALJ's finding that Plaintiff is capable of performing her past relevant work is not supported by substantial evidence. (Doc. 14 at 5-15.)  Defendant contends the ALJ's findings are supported by substantial evidence.  Moreover, Defendant asserts that assuming arguendo the job titles discussed by Plaintiff in her opening brief would have been selected by a vocational expert, the ALJ's restriction to simple one and two-step instructions does not preclude those positions identified by Plaintiff. (Doc. 17 at 5-10.)

At step four of the five-step sequential evaluation, the claimant carries the burden of proving that he can no longer perform his past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e) & 416.920(e)).  Specifically, the claimant is required to prove that he cannot return to his "former type of work" as that work is generally performed, not just that he cannot return to his particular job. *See Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986).  Although the burden of proof lies with the plaintiff at step four, the ALJ has the duty to make factual findings to support his ultimate conclusion. *Pinto*, 249 F.3d at 844.  The ALJ can meet this burden by comparing the physical and mental demands of the past relevant work with the plaintiff's actual RFC.  *Id*., at 845.

1  During the administrative hearing, Plaintiff's attorney inquired as follows:

> [ATTORNEY]: What was the last job you did?
> [PLAINTIFF]: The clean.
> Q. The cleaning job?
> A. Yes.
> Q. Was that with Vapor Technologies?
> A. Yes.
> Q. Why did you stop working there?
> A. They closed.
> Q. They closed down?
> A. Yes.
> Q. Have you tried looking for other jobs since that job?
> A. No.
> Q. Why not?
> A. Because no speak English.
> Q. How did you get that first job then, the other job, Vapor?
> A. My friend took me to work.
> Q. [Your] friend worked there?
> A. Yes.
> Q. Okay. Do you think you could do any of your past jobs full time based upon [your] problems today?
> A. No.

AR 337-338. Later, the ALJ made the following inquiries of Plaintiff regarding her past work experience:

> Q. . . . according to my records, you worked for a while for a company called Cargill [phonetic] Meats Solution Corporation. Do you remember that?
> A. I don't remember.
> Q. Do you remember a place called SOS Staffing Services?
> A. No, I don't know.
> Q. Did you ever work for a place called Broomfield Skilled Nursing?
> A. No, I don't remember.
> Q. All right. Thank you.

AR 344.[5] During the VE's testimony, the following colloquy occurred:

> [ALJ]: . . . I guess we really only have our hands around the one job at Vapor Technologies. Can you tell me what skill and exertional levels are associated with that work?
> [VE]: There are no transferable skills. It was a medium physical demand, unskilled.
> Q. All right. If we assume a worker of [Plaintiff's] age, education, and work experience and we assume she can understand, remember, and carry out simple one or two-step job instructions, can she perform [Plaintiff's] past relevant work?
> A. Yes.
> Q. Okay. And if we assume a hypothetical worker of [Plaintiff's] age, education and work experience who cannot maintain attention and concentration

---

[5] An earning report is located at page 68 of the Administrative Record.

    reliably through an eight-hour workday or a 40-hour workweek, can she perform [Plaintiff's] past relevant work or any other?
    A.  Not the past nor any other as normally found in the national economy.

AR 345.

As noted in *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993), "'If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work.'"  Here, the burden never shifted to the Secretary because Plaintiff did not show that she could not return to her previous job.

Nevertheless, given this record, the ALJ met his burden by comparing the physical and mental demands of Plaintiff's past job as a cleaner.

Included in the record is an undated "Claimant's Work Background" form that lists only one job outside the home between August 1999 and December 2002.  The employer listed is "Exell Beef Co." and the duties performed are "cut meat."  AR 86.  Also, Plaintiff indicated to Dr. Hirokawa that she worked previously, "but did not remember the details" of that work.  AR 323.  Additionally, in a Disability Report dated May 8, 2006, Plaintiff indicated she was employed as a "cleaner" at a "warehouse" between December 1999 and June 2001.  When asked to describe the job, Plaintiff responded "cleans doors, packed door lockers in bags."  A number of entries on the same page include the words "don't know."  Moreover, just above the entry for the cleaning position is the following statement: "I had worked but I don't know where and when or [what] the job title was."  This entry is then crossed out and the cleaning position is recorded below that entry.  AR 119.  Given the inconsistencies in this record, packing "door lockers in bags" could relate to any position Plaintiff may have held.

The ALJ's findings state as follows:

> The vocational expert, Thomas C. Dachelet, identified [Plaintiff's] past relevant work as a warehouse cleaner as unskilled labor performed at the medium exertional level.  He further testified a person with the same residual functional capacity and limitations as [Plaintiff], described above, can perform [her] past relevant work.
> I find [Plaintiff's] past relevant worker as a cleaner is consistent with her residual functional capacity.  Therefore, I conclude [she] remains capable of performing her past relevant work as a cleaner, and she is accordingly "not disabled" within the meaning of the Social Security Act . . ..

AR 19-20.

This record is replete with inconsistencies and Plaintiff's purported inability to remember her previous employment positions. Crediting Plaintiff's argument here would require the ALJ to continue to question her even where she testified to having no memory of working for three of her four previous employers and where she had previously indicated that she could not remember details of her prior work. AR 323, 344.

This record is further distinguished from that in *Pinto v. Massanari*. There, the claimant provided both a completed vocational report and her own testimony regarding past relevant work. *Pinto*, 249 F.3d at 845. The record here does not include a completed vocational report, and as previously discussed, Plaintiff's testimony is this regard is lacking. Additionally, in *Pinto*, the ALJ's RFC findings conflicted with her past relevant work as actually performed, particularly with regard to exertional limitations. *Id.*, at 844-846. As will be discussed below, no such conflict could arise here.

Assuming for the sake of argument that the Lock Assembler,[6] DOT 706.684-074, and Industrial Cleaner, DOT 381-687-018, positions had been evaluated at step five, no error occurred. Plaintiff complains the ALJ erred because he limited Plaintiff to one to two-step job instructions, yet the reasoning level identified in the Lock Assembler and Industrial Cleaner positions is a level two, thus precluding Plaintiff from such employment. (Doc. 14 at 8-15.) However, courts within the Ninth Circuit have consistently held that a limitation regarding simple or routine instructions encompasses a reasoning level of one *and* two.

In *Meissl v. Barnhart*, 403 F.Supp.2d 981, 983-985 (C.D. Cal. 2005), the Central District of California held that a limitation to simple and repetitive tasks was consistent with level two reasoning positions as provided for in the DOT. In that case, the claimant was limited to "simple tasks performed at a routine or repetitive pace." *Id.*, at 982. The court explained that while the Social Security regulations provided only two categories of abilities with regard to understanding

---

[6] The DOT Lock Assembler position is described as follows: "Fastens together parts of locks with screws, bolts, and rivets, using handtools and power tools: Files and fits parts to obtain smooth functioning of lock. Assembles inside lock parts in lock case and rivets side plate in place, using rivet tool. May pack locks in cartons and mark cartons to identify contents." (Doc. 14. Ex. 1.) On the same page that Plaintiff points to in support of her argument, Plaintiff also indicated that her previous position, whatever its title may have been, did *not* involve the use of machines, tools or equipment, or technical knowledge or skills. *See* AR 119.

and remembering instructions - "short and simple" and "detailed" or "complex" - the DOT has six gradations for measuring that ability. *Id.*, at 984.  The *Meissl* court held that to

> equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail."  Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

*Meissl v. Barnhart*, 403 F.Supp.2d at 984.  The use of the term "uninvolved" and "detailed" in the DOT qualifies the term and refutes any attempt to equate the SSR use of the term "detailed" with its use in the DOT. *Id*.  The court found a claimant's RFC must be compared with the DOT's reasoning scale.  Level one reasoning requires slightly less than simple tasks that are in some way repetitive.  An example of a level one reasoning job would include the job of counting cows as they come off a truck.  The court in *Meissl* determined that a limitation to simple repetitive tasks is not inconsistent with positions requiring level two reasoning. *Id.*; *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (a restriction to simple, repetitive tasks adequately captures deficiencies in concentration, persistence and pace).

      Here, the reasoning levels for the positions identified by Plaintiff in her argument on appeal both involve level two reasoning and thus are not in conflict with the ALJ's RFC finding regarding simple one or two-step instructions. *Meissl v. Barnhart*, 403 F.Supp.2d at 984.

      In sum, the ALJ's findings are supported by substantial evidence and are free of legal error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Sia Seechan.

IT IS SO ORDERED.

Dated:   **May 5, 2010**              **/s/ Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE